

SO ORDERED.

Robert J. Faris
United States Bankruptcy Judge

# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF HAWAII

| | |
|---|---|
| In re<br><br>HAWAII ISLAND AIR, INC.,<br><br>Debtor. | Case No. 17-01078<br>Chapter 7 |
| ELIZABETH A. KANE, Bankruptcy Trustee, et al.,<br><br>Plaintiffs,<br><br>vs.<br><br>PACAP AVIATION FINANCE, LLC, et al.,<br><br>Defendants. | Adv. Pro. No. 19-90027<br><br>Dkt. 23 |

## ORDER DENYING ELLISON DEFENDANTS' MOTION TO DISMISS

Certain defendants (collectively the "Ellison defendants") move to dismiss the complaint. The parties are familiar with the allegations of the complaint and the legal standard applicable to this motion, so I will not repeat them.

For the following reasons, I will DENY the motion in all respects except two: the Ellison Trust is dismissed as a party, without affecting the claims asserted against its trustees; and both Ohana and Lawrence Investments are dismissed from Count XIII.

<u>"Employer" Status under WARN Act and DWA.</u> Counts I, II, and III of the complaint allege, on behalf of the unions, that the defendants violated the WARN Act, 29 U.S.C. § 2101, and similar Hawaii legislation, the Dislocated Workers' Act ("DWA"), Haw. Rev Stat. ch. 394B, by failing to give the debtor's employees the required notice when the debtor ceased operations. Count V alleges, on behalf of the trustee, that when the defendants failed to cause the debtor to give the required notices, they breached their fiduciary duties to the debtor.

The Ellison defendants argue that none of them was an "employer" of the debtor's employees for purposes of the DWA, and that counts I and II should therefore be dismissed. But the DWA defines "employer" to include not just the employer in the conventional sense of that word, but also anyone who "directly or indirectly owns . . . or has a controlling interest in a covered establishment . . . ."[1] (There is no dispute that the debtor was a "covered establishment" under the DWA.)

The Ellison defendants argue that even this broader definition does not include

---

[1] Haw. Rev. Stat. § 394B-2.

2

them. They point out that Ohana Airline Holdings, LLC ("Ohana"), owned only a one-third interest in the debtor, and they contend that a minority owner (and its direct and indirect owners) do not "own" or have a "controlling interest in" the covered establishment for purposes of the DWA. I do not agree that a minority owner can never be liable under the DWA. Very briefly summarized, the complaint plausibly alleges that Ohana and the other Ellison defendants worked closely with the owners of the other two-thirds interest in the debtor and that the three owners allowed Jeff Au to run the debtor's business on their behalf. If these allegations are proven, Ohana could be either an owner or the holder of a controlling interest, or both, for purposes of the DWA.[2]

The Ellison defendants further argue that, as a matter of statutory construction, a minority owner cannot both be an "owner" and have a "controlling interest" in the covered establishment. At the pleading stage, the plaintiffs are entitled to maintain alternative theories,[3] provided that both theories are plausible, and I find that they are.

The Ellison defendants also argue that none of them is an "employer" for purposes of the WARN Act. The federal statute lacks the broader definition of "employer" found in the DWA, but courts have nevertheless held that, under certain

---

[2] There may be a point at which the interest of a person or entity in a chain of ownership is too "indirect" to meet the DWA definition, but a motion to dismiss is not the right procedural vehicle to resolve such a context-sensitive issue.

[3] *See* Fed. R. Civ. P. 8(d)(2).

U.S. Bankruptcy Court - Hawaii   #19-90027   Dkt # 60   Filed  01/03/20   Page 3 of 10

circumstances, a parent entity can be liable under the WARN Act to a subsidiary's employees.[4] But I need not consider this issue, because the complaint does not allege that Ohana or any of the other Ellison defendants is an "employer" under the WARN Act. Rather, the complaint claims that the Ellison defendants are liable for the debtor's violations of the WARN Act based on a "piercing the corporate veil" theory. The complaint adequately and plausibly alleges that the court should disregard the separateness of the debtor and the Ellison defendants and hold those defendants liable for any breach of the WARN Act (or the DWA) by the debtor.[5]

**Breaches of Fiduciary Duties.** Counts VII, VIII, and IX claim that the Ellison defendants are liable for breach of fiduciary duties owed to the debtor. The fiduciary duties have two alleged sources.

First, the complaint alleges that Mr. Marinelli owed fiduciary duties to the debtor, that he acted as an agent for Ohana and the other Ellison defendants, and that the Ellison defendants are liable for Mr. Marinelli's misconduct under standard agency principles. The Ellison defendants argue that Mr. Marinelli was a director of Ohana and that directors are not agents of the corporation. It is true that a directorship does

---

[4] *Childress v. Darby Lumber, Inc.*, 357 F.3d 1000, 1005-06 (9th Cir. 2004); *Int'l Bhd. of Teamsters v. American Delivery Service Co.*, 50 F.3d 770, 775-76 (9th Cir. 1995).

[5] *Bledsoe v. Emery Worldwide Airlines*, 258 F. Supp. 2d 780, 787 (S.D. Ohio 2003) (denying a rule 12(b)(6) motion to dismiss) ("Whether an owner or control person is liable as an "employer" under these statutes "is a fact-sensitive question which . . . should not be answered until the Plaintiffs have had some opportunity to conduct discovery on this matter.").

4

U.S. Bankruptcy Court - Hawaii   #19-90027   Dkt # 60   Filed 01/03/20   Page 4 of 10

not automatically create an agency relationship, but it also does not preclude one. The complaint adequately and plausibly alleges that Mr. Marinelli was both a director of Ohana and an agent of all of the Ellison defendants.

Second, the complaint alleges that Mr. Marinelli, Ohana, and Lawrence Investments owe fiduciary duties because they (through Mr. Marinelli) exercised control over the debtor. The Ellison defendants argue that Ohana was only a minority shareholder, but Delaware decisions hold that a shareholder who owns a majority interest in a corporation or exercises control over its business affairs owes fiduciary duties[6] to both minority shareholders and the corporation.[7] It is also clear under Delaware law that multiple minority shareholders can form a control group, and incur fiduciary duties, when they are "connected in some legally significant way-e.g. by contract, common ownership, agreement, or other arrangement[.]"[8] "Although parallel

---

[6] *NHB Assignments LLC v. General Atlantic LLC (In re PMTS Liquidating Corp.)*, 452 B.R. 498, 507 (Bankr. D. Del. 2011) ("[U]nder both Florida and Delaware law, a majority shareholder unquestionably owes a fiduciary duty to the corporation." A minority shareholder who exercises "actual control" over the corporation also assumes fiduciary duties.). *See also KSC Recovery, Inc. v. First Boston Corp. (In re Kaiser Merger Litig.)*, 168 B.R. 991, 999 (D. Colo. 1994) (minority shareholder owed fiduciary duties where it effectively controlled the corporation's day to day and other activities); *Luper v. Banner Indus. (In re Lee Way Holding Co.)*, 105 B.R. 404, 413 (Bankr. S.D. Ohio 1989) ("When a shareholder is able to determine corporate policy, whether by 'assuming management responsibility or by selecting management personnel,' the shareholder is deemed to be in control.").

[7] *Kahn v. Lynch Comm. Sys., Inc.*, 638 A.2d 1110, 1111 (Del. 1994).

[8] *Dubroff v. Wren Holdings, LLC*, 2009 WL 1478697, at *3 (Del. Ch. May 22, 2019) (citing *In re PNB Holding Co. S'holders Litig.*, 2006 WL 2403999, at *10 (Del. Ch. Aug. 18, 2006)).

5

interests alone are insufficient as a matter of law to support the inference that the shareholders were part of a control group, . . . parallel interests, in addition to other facts . . . can support a reasonable, but not necessarily conclusive, inference that a control group existed."[9]

While the complaint does not allege that the Ellison defendants had an express agreement to form a "control group" with the other shareholders, it does allege that they were linked in a legally significant way—they all delegated their authority to Mr. Au and gave him their consent to exercise control over the debtor's day to day operations.[10] Thus, the complaint adequately and plausibly alleges that the Ellison defendants owed fiduciary duties to the debtor and breached those duties.

The Ellison defendants also contend that the warrant they held to purchase additional stock in the debtor did not give them control. It is true that an unexercised warrant does not amount to control per se; but the issue here is actual control, not formal rights. The right and ability to take majority ownership, dilute other owners, and take control of the board and management can give the warrant holder significant actual influence over the company even before the warrant is exercised.

---

[9] *In re Hansen Medical, Inc. Stockholders Litig.*, 2018 WL 3030808, at *5 (Del. Ch. June 18, 2018) (internal quotation marks omitted). *See also Official Comm. of Unsecured Creditors v. Marini (In re Windspire Energy, Inc.)*, No. 3:13-CV-00010-RCJ-WGC, 2014 WL 763514, at *7-8 (D. Nev. Feb. 21, 2014) (applying Delaware law) ("It is the fact of control that matters.").

[10] Compl. ¶¶ 43-44.

6

U.S. Bankruptcy Court - Hawaii    #19-90027    Dkt # 60    Filed 01/03/20    Page 6 of 10

Mr. Marinelli's resignation as a director does not justify dismissal of the complaint at this stage. The complaint alleges that the debtor suffered damages due to decisions taken while Mr. Marinelli was still a director and that, even after his resignation, he continued to exert significant influence over the debtor on behalf of the Ellison defendants. If proven, these allegations could support a judgment against the Ellison defendants despite Mr. Marinelli's resignation.

Further, the complaint also alleges that Mr. Marinelli's resignation was itself a breach of duty. While resignation is the typical remedy for a director who can no longer support the company's actions, the complaint plausibly alleges Mr. Marinelli's abandonment of his position while the debtor was *in extremis* was a breach of duty.

The Ellison defendants tersely argue that Count VII is really a "deepening insolvency" claim that Delaware law does not recognize. I disagree. Although the Delaware courts have held that there is no independent claim for "deepening insolvency,"[11] the damages for a breach of the usual fiduciary duties of care, skill, or loyalty can be based on any decrease in the company's net worth caused by the breaches.[12] I hold that the allegations plausibly state claims that Mr. Marinelli's

---

[11] *Trenwick Am. Litig. Tr. v. Ernst & Young, L.L.P.*, 906 A.2d 168, 174 (Del. Ch. 2006); *aff'd sub nom. Trenwick Am. Litig. v. Billett*, 931 A.2d 438 (Del. 2007) ("Put simply, under Delaware law, 'deepening insolvency' is no more of a cause of action when a firm is insolvent than a cause of action for 'shallowing profitability' would be when a firm is solvent.")

[12] *Id.* at 205 ("The rejection of an independent cause of action for deepening insolvency does not absolve directors of insolvent corporations of responsibility. Rather, it remits plaintiffs to the

conduct amounted to a breach of fiduciary duties.

**The Ellison Trust.** The Ellison defendants argue that the Ellison Trust is not an entity with capacity to sue or be sued; instead, the plaintiffs may only sue its trustees. I agree with the legal proposition,[13] so the Ellison Trust should be dismissed as a party. But this will have no practical effect because the claims against Mr. Marinelli and Mr. Ellison as trustees of the Ellison Trust will remain.[14]

**Business Judgment Rule.** The Ellison Defendants argue that the business judgment rule protects Mr. Marinelli (and any of the other Ellison Defendants who would otherwise be liable for his conduct). The plaintiffs correctly point out that the business judgment rule does not apply to claims for breach of the duty of loyalty and only protects a party who acted in good faith.[15] Because the complaint adequately and plausibly alleges breaches of the duty of loyalty and the absence of good faith,

---

contents of their traditional toolkit, which contains, among other things, causes of action for breach of fiduciary duty and for fraud.").

[13] *See Northern Acceptance Tr. 1065 v. AMFAC, Inc.*, 51 F.R.D. 487, 489 (D. Haw. 1971) ("[A trust] has no standing or capacity to sue or be sued as a legal entity[.]").

[14] *Id.* ("'[T]hose rights remain somewhere,' either in a present party trustee or trustees, or in some other trustee or trustees who will succeed to the office or offices[.]") (quoting *Sun-Maid Raising Growers of Calif. v. California Packing Corp.*, 273 F.2d 282, 284 (9th Cir. 1959)).

[15] *In re Walt Disney Co. Derivative Litig.*, 908 A.2d 27, 52 (Del. 2006) (the presumptions of the business judgment rule "can be rebutted if the plaintiff shows that the directors breached their fiduciary duty of care or of loyalty or acted in bad faith."); *In re Orchard Enters., Inc. S'holder Litig.*, 88 A.3d 1, 34 (Del. Ch. 2014) ("In a transaction governed by the business judgment rule, the plaintiff has the burden at the pleadings stage to allege facts sufficient to rebut the presumptions of loyalty and good faith that protect the directors.").

8

dismissal is unwarranted.

**Claims against Mr. Ellison.** The Ellison defendants challenge the sufficiency of the allegations against Mr. Ellison individually. I hold that the complaint plausibly alleges that Mr. Ellison could be liable (a) as an indirect owner or control person of the debtor under the DWA, (b) by piercing the veils of the companies that stand between him and the debtor, and (c) vicariously for the wrongs of other Ellison defendants.

**Aiding and Abetting Claims.** The Ellison defendants challenge the sufficiency of the allegations that Mr. Marinelli aided and abetted Mr. Au's alleged breaches of duty. Assuming that the allegations of the complaint are true, they are sufficient to state a claim for aiding and abetting, and I hold that they meet the test of plausibility.

**Equitable Subordination and Recharacterization.** The Ellison defendants argue that the claims for equitable subordination and recharacterization against Carbonview Limited, LLC ("Carbonview") are deficient because Carbonview was only a lender and, as such, did not owe fiduciary duties to its borrower, the debtor. The cases on which the Ellison defendants rely are distinguishable, however, because the complaint in this case alleges that Mr. Marinelli, acting on behalf of Carbonview as well as the other Ellison defendants, exercised control over the debtor's business.[16] The complaint

---

[16] *See Garrett v. BankWest, Inc.*, 459 N.W. 2d 833, 839 (S.D. 1990) (lender did not owe fiduciary duties to the debtor where lender did not possess an advantage over the debtor or exercise sufficient control over the debtor's management and operations); *Southern Fed. Sav. & Loan Ass'n v. 21-26 East 105th St. Associates*, 145 B.R. 375, 384 (S.D.N.Y. 1991) (lender owed no fiduciary duties to the debtor in absence of allegations that the parties had "a relationship of trust and

9

plausibly alleges that the Ellison defendants acted together and that the misconduct of each should be attributed to all of them. These allegations are sufficient to state a claim.[17]

I will dismiss all the Ellison defendants except Carbonview from the recharacterization claims. Only Carbonview has made claims against the estate,[18] and only claims against the estate may be recharacterized and subordinated.

**Indemnification.** In Count X, the trustee contends that the defendants must indemnify the estate against any claims arising from their alleged breaches. The Ellison defendants argue that the trustee cannot seek indemnification from them because the debtor was the wrongdoer. The trustee responds that, in his view, the debtor and all of the Ellison defendants are liable under the DWA, and that indemnity may be awarded among jointly liable parties to avoid unjust enrichment. Thus, Count X states a claim.

END OF ORDER

---

confidence[.]"). *See also In re KKR Financial Holdings LLC S'holder Litig.*, 101 A.3d 980, 995 (Del. Ch. 2014) ("[T]he focus of the inquiry is on whether the stockholder can exercise actual control over the corporation's board. Here, there are no well-pled facts from which it is reasonable to infer that KKR could prevent the KFN board from freely exercising its independent judgment[.]").

[17] Under Ninth Circuit precedent, recharacterization claims are based on state law, not the Bankruptcy Code. *Fitness Holdings Int'l, Inc. v. Hancock Park Capital II, L.P. (In re Fitness Holdings Int'l, Inc.)*, 714 F.3d 1141, 1148-49 (9th Cir. 2013). Neither party has cited any controlling authority on the viability of this theory under Hawaii law. I decline to make a prediction about Hawaii law at this early stage of the case.

[18] *See* claim no. 190 in dkt. 17-01078.

U.S. Bankruptcy Court - Hawaii   #19-90027   Dkt # 60   Filed 01/03/20   Page 10 of 10