Date Signed:
January 3, 2020




UNITED STATES BANKRUPTCY COURT

DISTRICT OF HAWAII

| | |
|---|---|
| In re<br><br>HAWAII ISLAND AIR, INC.,<br><br>Debtor. | Case No. 17-01078<br>Chapter 7 |
| ELIZABETH A. KANE, Bankruptcy Trustee, et al.,<br><br>Plaintiffs,<br><br>vs.<br><br>PACAP AVIATION FINANCE, LLC, et al.,<br><br>Defendants. | Adv. Pro. No. 19-90027<br><br>Dkt. 18 |

ORDER DENYING AU/TSUI DEFENDANTS' MOTION TO DISMISS

Certain defendants (collectively the "Au/Tsui defendants") move to dismiss the complaint. The parties are familiar with the allegations of the complaint and the legal standard applicable to this motion, so I will not repeat them.

For the following reasons, I will DENY the motion in its entirety.

Miscellaneous Accusations. The Au/Tsui defendants argue that there is a conflict of interest between the trustee and the union plaintiffs, that the trustee has failed to sue the debtor's attorney for legal malpractice, that the trustee is breaching her duty to defend the estate against the unions' claims, and that the trustee has failed to sue one of the debtor's former directors. Assuming that any of these accusations are accurate,[1] the Au/Tsui defendants fail to establish that they justify dismissal of the complaint. A breach of the trustee's duties to the estate would not excuse the defendants from whatever liabilities they have to the estate.

Effect of Automatic Stay. Counts I, II, and III of the complaint allege, on behalf of the unions, that the defendants violated the WARN Act, 29 U.S.C. § 2101, and similar Hawaii legislation, the Dislocated Workers' Act ("DWA"), Haw. Rev. Stat. ch. 394B, by failing to give the debtor's employees the required notice when the debtor ceased operations. Count V alleges, on behalf of the trustee, that when the defendants failed to cause the debtor to give the required notice, they breached their fiduciary duties to the debtor.

The Au/Tsui defendants argue that they could not have given the required

[1] They are probably not accurate. For example, in order to resolve any conflict of interest, the trustee and the unions agreed to jointly prosecute and share the proceeds of their claims, and the court approved the agreement. Dkt. 658 in Bk. No. 17-1078. PaCap Aviation Finance, LLC ("PAF") took no position on the motion to approve the agreement, but reserved its right to "challeng[e] at the appropriate time the *standing*" of the trustee and the unions. Dkt. 646 at 2 (emphasis added). The Au/Tsui defendants' argument has nothing to do with standing.



U.S. Bankruptcy Court - Hawaii #19-90027 Dkt # 61 Filed 01/03/20 Page 2 of 8

notice without violating the automatic stay. I disagree. Even assuming (for the sake of argument) that the automatic stay barred the defendants from giving the required notice, the complaint adequately and plausibly alleges that they (through their representative, defendant Jeff Au) were in control of the debtor at the time and could have caused the debtor to give the required notice.

**"Employer" Status under WARN Act and DWA.** The Au/Tsui defendants argue that they were not an "employer" of the debtor's employees for purposes of the WARN Act and the DWA. This argument does not justify dismissal of the case at the pleading stage. Under certain circumstances, a parent entity can be liable under the WARN Act to a subsidiary's employees.[2] The same is true of the DWA.[3] Whether an owner or control person is liable as an "employer" under these statutes "is a fact-sensitive question which . . . should not be answered until the Plaintiffs have had some opportunity to conduct discovery on this matter."[4]

---

[2] *Childress v. Darby Lumber, Inc.*, 357 F.3d 1000, 1005-06 (9th Cir. 2004); *Int'l Bhd. of Teamsters v. American Delivery Service Co.*, 50 F.3d 770, 775-76 (9th Cir. 1995). *Chauffeurs, Sales Drivers, Warehousemen & Helpers Union Local 572 v. Weslock Corp.*, 66 F.3d 241 (9th Cir. 1995) and other cases holding that secured lenders are generally not liable as "employers" under the WARN Act are distinguishable because the complaint adequately and plausibly alleges that the Au/Tsui defendants were "responsible for operating [the debtor's] business as a going concern." *Chauffeurs*, 66 F.3d at 244.

[3] Haw. Rev. Stat. § 394B-2 (defining "employer" as "any individual or entity that, directly or indirectly, owns, operates, or has a controlling interest in a covered establishment[.]").

[4] *Bledsoe v. Emery Worldwide Airlines*, 258 F. Supp. 2d 780, 787 (S.D. Ohio 2003) (denying a rule 12(b)(6) motion to dismiss).



U.S. Bankruptcy Court - Hawaii #19-90027 Dkt # 61 Filed 01/03/20 Page 3 of 8

The fact that the debtor designated David Uchiyama as its "responsible person" during the chapter 11 phase of the bankruptcy case is of no consequence. Our local rule requires that designation in order to make sure that at least one person is responsible for the conduct of the case. The local rule and the designation it requires are not intended to, and could not, relieve anyone of any responsibility under any applicable statute.

Further, even if the Au/Tsui defendants were not "employers" of the debtor's employees, the complaint adequately and plausibly alleges that the court should "pierce the corporate veil" between the debtor and the various Au/Tsui defendants, or treat Mr. Au as a control person of the debtor and an agent of the other Au/Tsui defendants, and hold those defendants liable for any breach by the debtor of the WARN Act or the DWA.

<u>Breaches of Fiduciary Duties</u>. Counts IV through VI and IX claim that certain of the Au/Tsui defendants owed and breached fiduciary duties to the debtor. The Au/Tsui defendants argue that, under Delaware law,[5] a parent corporation does not owe fiduciary duties to a wholly-owned subsidiary or its creditors unless the parent corporation is insolvent.[6] The premise of this argument is false: the debtor had three

---

[5] All parties agree that, under the internal affairs doctrine, Delaware law governs this issue. *First Nat'l City Bank v. Banco Para El Comercio Exterior de Cuba*, 462 U.S. 611, 621 (1983).

[6] *Trenwick Am. Litig. Tr. v. Ernst & Young, L.L.P.*, 906 A.2d 168, 173 (Del. Ch. 2006), *aff'd sub nom. Trenwick Am. Litig. Tr. v. Billett*, 931 A.2d 438 (Del. 2007).



U.S. Bankruptcy Court - Hawaii #19-90027 Dkt # 61 Filed 01/03/20 Page 4 of 8

owners, so it was not a wholly-owned subsidiary of any of the defendants. Further, some Delaware decisions hold that a person who is a majority owner of a corporation or exercises control over the corporation owes fiduciary duties[7] to both minority shareholders and the corporation.[8] It is also clear under Delaware law that multiple minority shareholders can form a control group, and incur fiduciary duties, when they are "connected in some legally significant way-e.g. by contract, common ownership, agreement, or other arrangement[.]"[9] Although the Complaint does not allege that the Au/Tsui defendants had an express agreement to work together, it does allege that they were linked in a legally significant way—they both opted to have Jeff Au take control of the debtor on their behalf.[10] Thus, the complaint adequately and plausibly alleges

---

[7] *Id.* at 192 n.66; *NHB Assignments LLC v. General Atlantic LLC (In re PMTS Liquidating Corp.)*, 452 B.R. 498, 507-08 (Bankr. D. Del. 2011) ("[U]nder both Florida and Delaware law, a majority shareholder unquestionably owes a fiduciary duty to the corporation." A minority shareholder who exercises "actual control" over the corporation also assumes fiduciary duties.). *See also Official Comm. of Unsecured Creditors v. Marini (In re Windspire Energy, Inc.)*, No. 3:13-CV-00010-RCJ-WGC, 2014 WL 763514, at *7-8 (D. Nev. Feb. 21, 2014) (minority shareholders incur fiduciary duties if they function as a "control group." "It is the fact of control that matters."); *KSC Recovery, Inc. v. First Boston Corp. (In re Kaiser Merger Litig.)*, 168 B.R. 991, 999 (D. Colo. 1994) (minority shareholder may have owed fiduciary duties where plaintiff alleged it effectively controlled the corporation's day to day and other activities); *Luper v. Banner Indus. (In re Lee Way Holding Co.)*, 105 B.R. 404, 413 (Bankr. S.D. Ohio 1989) ("When a shareholder is able to determine corporate policy, whether by 'assuming management responsibility or by selecting management personnel,' the shareholder is deemed to be in control.").

[8] *Kahn v. Lynch Comm. Sys., Inc.*, 638 A.2d 1110, 1111 (Del. 1994).

[9] *Dubroff v. Wren Holdings, LLC*, 2009 WL 1478697, at *3 (Del. Ch. May 22, 2019).

[10] At the hearing on the motion, counsel for the Au/Tsui defendants argued, for the first time, that Mr. Au could not have been in control of the debtor because the debtor had to comply with intrusive Federal Aviation Administration regulations. I will not rule on this issue because it was presented too late, but I will observe that it is implausible. If the argument is correct, it would be



U.S. Bankruptcy Court - Hawaii #19-90027 Dkt # 61 Filed 01/03/20 Page 5 of 8

that the Au/Tsui defendants owed fiduciary duties to the debtor and breached those duties.[11]

Mr. Au argues that an exculpatory provision in the debtor's certificate of incorporation protects him from liability. I reject this argument. The exculpatory provision protects only the debtor's directors. Mr. Au was careful to avoid becoming a director of the debtor. Rather, the complaint adequately and plausibly alleges that he was a de facto officer of the debtor corporation[12] and that he exercised control over the debtor on behalf of all of the Au/Tsui defendants. The exculpatory provision does not protect individuals occupying those roles.

The complaint alleges, among other things, that the defendants breached their fiduciary duties by imposing an undercapitalized business plan on the debtor. Mr. Au

---

impossible for any private individual to be in "control" of any regulated enterprise, such as a bank, insurance company, common carrier, utility, hospital, etc.

[11] The complaint also adequately and plausibly alleges that Mr. Au acted as agent for all of the other Au/Tsui defendants, and that the other defendants are liable for Mr. Au's wrongs on an agency theory.

[12] The Au/Tsui defendants argue that Mr. Au cannot be viewed as a de facto officer because there was no "legally insufficient appointment or election process." The de facto officer doctrine is not that narrow. "A *de facto* officer is one who actually assumes possession of an office under the claim and color of an election or appointment and who is actually discharging the duties of that office, but for some legal reason lacks *de jure* legal title to that office." *In re Walt Disney Co. Derivative Litig.*, 906 A.2d 27, 48 (Del. 2006). The complaint alleges that the debtor's board unanimously appointed Mr. Au to serve as a "Managing Director, Chairman, and member of the Executive Committee," but, contradicting the titles it conferred, stated that he would not be a corporate director, officer, or agent. The allegation that the board gave Mr. Au important titles with one hand, but then purported to take away with the other hand the responsibilities that accompany those titles, and that Mr. Au used the titles in his dealings with third parties on behalf of the corporation, is sufficient to invoke the de facto officer doctrine.



U.S. Bankruptcy Court - Hawaii #19-90027 Dkt # 61 Filed 01/03/20 Page 6 of 8

argues that he did not owe a fiduciary duty to the debtor when the plan was allegedly formulated because the Au/Tsui defendants had not yet acquired interests in the debtor at that time. This ignores the complaint's allegations that both the formulation and the implementation of the business plan breached duties, and that the plan was implemented after Mr. Au took control of the debtor.

The Au/Tsui defendants argue (for the first time in their reply brief) that the trustee is improperly asserting claims belonging to creditors, not the estate.[13] I reject this argument because (1) the Au/Tsui defendants raised it too late; (2) under Delaware law and the well-pleaded allegations of the complaint, at least some of the asserted claims belong to the estate; and (3) the pleading stage is too early to determine with precision which claims belong to the trustee and which belong only to creditors.

**Indemnification.** In Count X, the trustee contends that the defendants must indemnify the estate against any claims arising from their alleged breaches. The Au/Tsui defendants argue (for the first time in their reply brief) that the unions have no administrative claims against the estate because they failed to file timely administrative claims. I will not rule on this argument because the Au/Tsui defendants improperly raised it too late. Further, the premise of the argument is false: ALPA and the Teamsters did file timely requests for payment of administrative expenses[14] and

---

[13] *Caplin v. Marine Midland Grace Trust Co. of N.Y.*, 406 U.S. 416 (1972).

[14] Filed in the claims register as claim no. 105 and 117, respectively.



U.S. Bankruptcy Court - Hawaii #19-90027 Dkt # 61 Filed 01/03/20 Page 7 of 8

many other former employees and other creditors filed proofs of claim that might support indemnity claims.

**"Deepening Insolvency."** The Au/Tsui defendants argue that Count VI is really a "deepening insolvency" claim that Delaware law does not recognize. I disagree. Although the Delaware courts have held that there is no independent claim for "deepening insolvency,"[15] the damages for a breach of the usual fiduciary duties of care, skill, or loyalty can be based on any decrease in the company's net worth caused by the breaches.[16] Count VI adequately and plausibly alleges that the Au/Tsui defendants breached duties of loyalty to the debtor and that those breaches caused the debtor to lose cash and other assets. Taken as true, these allegations state a claim upon which relief may be granted.

END OF ORDER

[15] *Trenwick*, 906 A.2d at 174 ("Put simply, under Delaware law, 'deepening insolvency' is no more of a cause of action when a firm is insolvent than a cause of action for 'shallowing profitability' would be when a firm is solvent.")

[16] *Id.* at 205 ("The rejection of an independent cause of action for deepening insolvency does not absolve directors of insolvent corporations of responsibility. Rather, it remits plaintiffs to the contents of their traditional toolkit, which contains, among other things, causes of action for breach of fiduciary duty and for fraud.").



U.S. Bankruptcy Court - Hawaii #19-90027 Dkt # 61 Filed 01/03/20 Page 8 of 8