Date Signed:
January 13, 2022



SO ORDERED.

Robert J. Faris
United States Bankruptcy Judge

UNITED STATES ~~BANKRUPTCY COURT~~

DISTRICT OF HAWAII

| | |
|---|---|
| In re:<br>Hawaii Island Air, Inc.<br>        Debtor. | Case No. 17-01078<br>Chapter 7 |
| Elizabeth A. Kane, Bankruptcy Trustee, et al.;<br>        Plaintiffs,<br>  vs.<br>PaCap Aviation Finance, LLC, et al.<br>        Defendants. | Adv. Pro. No. 19-90027<br>Dkt. 309, 334, 338, 344, 368 |

## ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT

In the first three counts of the complaint (ECF 1), plaintiffs Air Line Pilots Association, International and Hawaii Teamsters and Allied Workers, Local 996 (the "Unions"), allege violations of the Dislocated Workers Act, Haw. Rev. Stat. § 394B ("DWA"), and the Worker Adjustment and Retraining Notification Act, 29 U.S.C. § 2102 ("WARN Act"). The Unions have filed a motion (ECF 309) for partial summary judgment seeking a decision on certain specific issues under those counts.

The court held a hearing on the motion on December 17, 2021. At the hearing, Wendy Hanakahi and Nickolas Kacprowski appeared for the Unions, Darryl Rains and Christopher Muzzi appeared for the "Ohana-Related Defendants,"[1] Peter Ito and Christian Adams appeared for the "Malama-Related Defendants",[2] David Farmer appeared for defendants Christopher Gossert and Katherine Yannone, and Scott Kubota appeared for third-party defendant David Uchiyama.

I will GRANT IN PART and DENY IN PART the Unions' motion.

I.  **SCOPE OF DECISION**

The motion brought by the Unions requests a summary judgment determination on ten specific issues described below. Some of the responding defendants have raised other issues in their responsive papers. Because no defendant has filed a countermotion, I will not rule on any issue that the motion does not present for decision.

---

[1] Ohana Airline Holdings, LLC ("Ohana"), Lawrence Investments LLC, the Lawrence J. Ellison Revocable Trust (the "Ellison Trust), Carbonview, LLC, Paul Marinelli, and Lawrence J. Ellison.

[2] Defendants PaCap Aviation Finance, LLC ("PAF"), Malama Investments, LLC ("MIL"), PaCap Management Holdings, LLC ("PMH"), SnowBiz Ventures, LLC ("SnowBiz"), Pacificap Investment Management, LLC, PaCap Management Solutions, LLC, PaCap Advisors, LLC, Jeffrey Au, the Jack Chuck She Tsui Trust (the "Tsui Trust"), and Jack Tsui.

A nonexclusive list of the issues I am *not* deciding is (1) whether and to what extent Hawaii Island Air, Inc. (the "Debtor") was a "covered establishment" under the DWA; (2) whether the Unions have standing to bring DWA or WARN Act claims;[3] (3) whether *any* defendant is an "employer" under the WARN Act; (4) whether the Ohana-Related Defendants are "employers" under the DWA on any grounds other than those asserted in the Unions' motion; (5) any issue related to calculation of damages such as which employees' claims (if any) the Unions can assert; and (6) any issues presented by the bankruptcy trustee's claims.

## II. SUMMARY JUDGMENT STANDARDS

Rule 56 requires the court to grant summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Porter v. Cal. Dept. of Corr.*, 419 F.3d 885, 891 (9th Cir. 2005). A main purpose of summary judgment is to dispose of factually unsupported claims and defenses. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323-324 (1986). Evidence and inferences must be construed in the light most favorable to the nonmoving party. *Porter*, 419 F.3d at 891. The court does not make credibility determinations or weigh conflicting

---

[3] The Ohana-Related Defendants argue that the court should decide the Unions' standing at this stage because a decision on the other issues may have preclusive effect. This may or not be correct, but it is not sufficient to justify granting relief to defendants who have not filed motions seeking that relief.

3

U.S. Bankruptcy Court - Hawaii   #19-90027   Dkt # 394   Filed  01/13/22   Page 3 of 19

evidence at the summary judgment stage. *Id.*; *see Nelson v. City of Davis*, 571 F.3d 924, 928 (9th Cir. 2009).

III. **DISCUSSION**

    a. **PAF, MIL, Ohana, the Tsui Trust, the Ellison Trust, Mr. Au, and PMH "Owned" the Debtor under the DWA**

The DWA provides that an "employer in a covered establishment shall provide to each employee written notification of a closing, divestiture, partial closing, or relocation at least sixty days prior to its occurrence." Haw. Rev. Stat. § 394B-9(a). An employer who violates this provision is potentially liable for up to sixty days pay and benefits. Haw. Rev. Stat. § 394B-9(b).

The DWA defines an employer as "any individual or entity that, directly or indirectly, owns, operates, or has a controlling interest in a covered establishment, excluding the State or any political subdivision thereof." Haw. Rev. Stat. § 394B-2.

The Unions' motion asks me to decide three issues[4] concerning the meaning of "owns" in the DWA's definition of "employer":

(1) PAF, MIL, and Ohana are "employers" within the meaning of Haw. Rev. Stat. § 394B-2 because each of them directly owned the Debtor at the time of the violations;

---

[4] I have rephrased some of the issues stated by the Unions. I intend no substantive change.

(2) The Tsui Trust, the Ellison Trust, and Mr. Au are "employers" under the DWA because they indirectly owned the Debtor at the time of the violations; and

(3) PMH and SnowBiz are "employers" under the DWA because they were also indirect owners of Debtor at the time of the violation.

The DWA imposes liability on an entity that directly or indirectly "owns," operates, or has a controlling interest in a covered establishment. Haw. Rev. Stat. § 394B-2. The statute does not define word "own." The parties propose two different definitions.

According to the Unions, anyone who has any ownership interest in a covered establishment "owns" that establishment. They argue that the purpose of the DWA is to protect employees from the effects of unexpected and sudden lay-offs or terminations which result from business closures. *See* Haw. Rev. Stat. § 394B-1. The Unions argue that the DWA, similar to the WARN Act, should be construed broadly to effect this purpose and defenses should be narrowly construed. *See Sinder v. Commercial Fin. Servs., Inc.*, 288 B.R. 890, 895 (N.D. Okla. 2002). To this end, the Unions argue that because the legislature did not specify a level of ownership, *any* amount of ownership of a covered entity makes one liable for a DWA violation.

According to the defendants, this definition has two flaws.

5

First, it leads to results that the legislature probably did not intend. Under the Unions' construction, if General Motors (for example) violated the DWA, all affected employees could recover the full amount of their DWA claims from the holder of just one share of General Motors' stock.[5] The Unions attempt to minimize this logical consequence of their definition by saying that they are not aware that anyone has ever made such a claim. But they offer no reason why a union or employee could not make such a claim, and the fact that no one has had enough chutzpah to make such a claim illustrates the absurdity and injustice of the Unions' interpretation. The Unions also say that, in such a situation, the single shareholder could seek recompense from the officers and controllers of the company, but the statute does not provide for contribution or indemnity and asserting such claims would be expensive and risky.

Second, the defendants contend that the Union's interpretation creates an internal statutory conflict. The statute says that one is an employer if one "owns" or has a "controlling interest." The defendants point out that, if every holder of an ownership interest, no matter how tiny, is an "owner", the "controlling interest" category would be superfluous. This would violate the familiar rule that a court should construe a statute in a way that gives effect, if possible, to every word used

---

[5] According to www.nasdaq.com, about 1.452 million shares of General Motors stock are currently outstanding. One share represents about 0.007% ownership of the company.

6

U.S. Bankruptcy Court - Hawaii    #19-90027    Dkt # 394    Filed   01/13/22    Page 6 of 19

by the legislature, without rendering words superfluous, void, or insignificant. *See Connell v. Lima Corporate*, 988 F.3d 1089, 1097 (9th Cir. 2021) (internal citation omitted).

On the other hand, the defendants argue that only one person can "own" something, so ownership means nothing less than 100% ownership. They argue that if the legislature intended for this category to encompass anything less than full ownership, it would have used the term "ownership interest" rather than "own." This argument implies that none of the defendants "owns" the Debtor as three entities each had only a one-third interest.

The Unions contend that the defendants' interpretation also suffers from two flaws.

First, the argument assumes that the verb "owns" is always singular. But this is untrue. In common speech, people frequently say, "we own our home." Similarly, if the argument is correct, an entity that is owned by multiple people has no "owner" for purposes of the DWA.

Second, the Unions say that the defendants' interpretation renders the word "own" superfluous because an 100% owner is necessarily also a holder of a "controlling interest."

The definitions proposed by the defendants and the Unions are both imperfect. When there is doubt, doubleness of meaning, or indistinctiveness or

uncertainty of an expression used in a statute, an ambiguity exists. *Gillan v. Government Employees Inc. Co.*, 194 P.3d 1071, 1079 (Haw. 2008). I find that, as defined, the word "owns" in the statute is ambiguous, because both of the divergent meanings for which each side argues are reasonable (or, more precisely, they are equally unreasonable). *See Arizona v. Tohono O'odham Nation*, 818 F.3d 549, 556 (9th Cir. 2016) (holding a statute is ambiguous if it is susceptible to more than one reasonable interpretation). Accordingly, I must ascertain the meaning of the word using the standard tools of statutory interpretation.

The legislative history of this statute is unhelpful as it does not address the intended meaning of the word "own" in the definition of employer.

Words used in a statute should be given their common meaning unless the legislature evidently intended another meaning. *Richards v. U.S.*, 369 U.S. 1, 9 (1962) ("we must, of course, start with the assumption that the legislative purpose is expressed by the ordinary meaning of the words used"); *see U.S. v. Gallegos*, 613 F.3d 1211, 1214 (9th Cir. 2010) ("when a statute does not define a term, we generally interpret that term by employing the ordinary, contemporary, and common meaning of the words that Congress used") (internal citations omitted). In common speech, people say that they "own" something even if they do not have a 100% interest, but they do not say they "own" a thing in which they have a tiny interest. For example, the owner of a single share of General Motors stock would

8

not typically say that she "owns" General Motors, while the owner of 99% of the company's stock might well identify herself as the "owner" of the company. The common meaning of the word "own" is somewhere between 100% ownership and small minority ownership. But the common meaning of the word does not specify where the threshold lies.

Another rule of construction under Hawaii law is that a court should interpret a statute in a manner consistent with its evident purposes. *Jijun Yin v. Aguiar*, 463 P.3d 911, 923 (Haw. 2020) ("statutes should be interpreted according to the intent, meaning, and purpose of the overall statutory scheme and not in a manner that would lead to absurd and unjust results"); *Connell*, 988 F.3d at 1097 ("If we find the language ambiguous we are left to resolve that ambiguity and find the interpretation that is more consistent with the broader context and primary purpose of the statute") (internal citations omitted). The goal of the DWA is to give advance notice of mass layoffs to affected employees. This suggests that an "owner" under the DWA must have a large enough ownership interest to influence the employer's decision to give the required notice. Imposing liability on a smaller owner is unnecessary to achieve this goal and instead would be purely punitive.

Another standard rule of statutory construction is that, when words are associated in a context that the words have something in common, they should be assigned a permissible meaning that makes them similar. *See Friends of Animals v.*

9

*United States Fish and Wildlife Service*, 879 F.3d 1000, 1008 (9th Cir. 2018) (quoting Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 195 (2012)). Specifically, words grouped in a list should be given related meaning. *Id.* at 1007 (quoting *Third Nat'l Bank in Nashville v. Impac Ltd.*, 432 U.S. 312, 322 (1977)). Here, the statute creates an association between three categories of covered groups: (1) those who own, (2) those who operate, (3) and those who hold a controlling interest. The commonality between these three groups is that, because of their position, members of each group can influence the decision-making and conduct of the immediate employer.

I conclude that a person who "owns" a covered establishment under the DWA is one who has a large enough ownership interest to be able to influence the employer's decision to give the notice that DWA requires. Whether a particular person's ownership interest is large enough must be decided on a case by case basis.

Under this interpretation, there is substantial overlap between the terms "owns" and controlling interest." A person who has a large enough ownership interest in a company to qualify as an "owner" is probably also the holder of a "controlling interest." But the overlap is not complete, because control can flow from sources other than a majority ownership interest. *See, e.g., Pension Sys. Of City of Kansas City, Missouri Tr. v. Persidio, Inc.*, 251 A.3d 212, 274 (Del. Ch.

U.S. Bankruptcy Court - Hawaii    #19-90027    Dkt # 394    Filed  01/13/22    Page 10 of 19

2021) (citing *Kahn v. Lynch Commc'ns Sys., Inc.,* 638 A.2d 1110, 1113-14 (Del. 1994) (holding fiduciary duties attached to a stockholder who controlled the corporation either through ownership of a majority of the corporation's voting power or by exercising *actual* control over the corporation's affairs) (emphasis added). For example, a company might have two classes of stock that give majority economic rights to one class but majority voting rights to the other class; or a person might hold a bond that is convertible to a large quantity of stock, such that the threat to dilute the existing stockholders' interest gives the bondholder substantial sway over the company; or all stock might be subject to a voting trust agreement that gave a minority stockholder (or even a non-stockholder) control of a majority of voting rights. *See, e.g., eBay Domestic Holdings, Inc. v. Newmark*, 16 A.3d 1, 26 (Del. Ch. 2010) (although neither corporate director individually owned a majority of corporation's shares, the law treated them as controlling stockholders because they formed a control group, bound together by a voting agreement, with the power to elect the majority of the corporate board).

Under this interpretation, PAF and MIL "owned" the Debtor. It is undisputed that PAF and MIL were each one-third owners of the Debtor, that they each had the power to elect one of the Debtor's three directors, and that they acted in unison in all respects under the direction of Mr. Au. Under the undisputed facts, this group had enough sway over the Debtor's affairs to qualify as an "owner."

U.S. Bankruptcy Court - Hawaii    #19-90027    Dkt # 394    Filed 01/13/22    Page 11 of 19

The DWA imposes liability on those who "directly or indirectly" own the covered establishment. It is undisputed that Mr. Au ultimately owned Malama, that the Tsui Trust and PMH owned PAF, that Mr. Au owned PAF, and that Mr. Tsui deferred to Mr. Au's decisions concerning the Debtor in all respects. Thus, Mr. Au, the Tsui Trust, and PMH indirectly "owned" the Debtor.

Genuine issues of fact preclude summary judgment on the issues of whether Ohana and the Ellison Trust owned the Debtor within the meaning of the DWA. Ohana held only one-third of the stock of the Debtor and had the right to elect only one of its three directors. But its affiliate, Carbonview, held a secured claim against the Debtor that was apparently convertible to stock. Although the terms of the conversion privilege are not clear from the record, a jury might find that conversion privilege boosted the Ohana-Related Defendants' influence over the Debtor's affairs to the level of ownership. Further, a jury might conceivably find that Ohana acted in close enough concert with Mr. Au and the other Malama-Related Defendants to create a group such that they should all be collectively treated as the "owner" of the Debtor.

It is undisputed that SnowBiz did not obtain an indirect ownership interest until after the Debtor ceased operations. For this reason, I find that SnowBiz was not an "employer" under the DWA.

12

U.S. Bankruptcy Court - Hawaii   #19-90027   Dkt # 394   Filed 01/13/22   Page 12 of 19

Therefore, I will GRANT in part and DENY in part the Unions' motion on this issue.

### b. PAF, MIL, the Tsui Trust, and Mr. Au Had a "Controlling Interest" in the Debtor under the DWA

The fourth and fifth issues that the Unions want me to decide have to do with the meaning of a "controlling interest":

(4) PAF and MIL are "employers" under the DWA because they directly and collectively held a controlling interest in the Debtor; and

(5) The Tsui Trust and Mr. Au are "employers" under the DWA because they indirectly and collectively held a controlling interest in the Debtor (i.e. over 50%) through their controlling interests in PAF and MIL.

It is undisputed that these entities collectively had the power to elect two of the Debtor's three directors. There is no genuine dispute that they always acted in concert: Mr. Tsui has testified that he deferred completely to Mr. Au on all matters related to the Debtor. This means that they had a direct or indirect "controlling interest" in the Debtor when the DWA notice should have been given. Therefore, I will GRANT the Unions' motion on this issue.

### c. The "Divesture" Exception to DWA Liability Does Not Apply

The DWA provides a limited exception to the sixty-day notification period: "[a]n employer of a covered establishment that is actively seeking a buyer for a sale, transfer, or merger shall not be required to provide the notice required under

subsection (a) until the employer has entered into a binding agreement for the sale, transfer, or merger of the covered establishment that results in a divestiture." Haw. Rev. Stat. § 394B-9(c).

This exception is the subject of the Unions' sixth request. They ask me to decide that:

(6) The defense under § 394B-9(c) is unavailable to Defendants because the statutory requirement of a "divestiture" as defined in Haw. Rev. Stat. § 394B-2 is not satisfied under these facts.

The defendants argue that the Debtor was attempting to arrange a transaction that would have solved its financial problems. But this is not sufficient. The exception does not excuse an employer from giving the required notice. Instead, it delays the time when the company must give the notice; if the company is seeking a buyer, the company need not give the notice until it makes a binding agreement. It follow that, if the company never makes such an agreement and abandons its efforts, it must give the required notice. Further, it is undisputed that there was never a "divestiture." Therefore, the exception does not apply, and I will GRANT the motion on this issue.

U.S. Bankruptcy Court - Hawaii    #19-90027    Dkt # 394    Filed 01/13/22    Page 14 of 19

### d. WARN Act Defenses – Faltering Business and Unforeseeable Circumstances

The WARN Act provides that "[a]n employer shall not order a plant closing or mass layoff until the end of a sixty-day period after the employer serves written notice of such an order" on certain parties. 29 U.S.C. § 2102(a).

Two provisions of the WARN Act allow for a reduction of the notification period. First, the so-called "Faltering Business defense" allows an employer to reduce the sixty-day notification period "if as of the time that notice would have been required the employer was actively seeking capital or business which, if obtained, would have allowed the employer to avoid or postpone the shutdown, and the employer reasonably and in good faith believed that giving the notice required would have precluded the employer from obtaining the capital or business." 29 U.S.C. § 2102(b)(1).

Second, the so-called "Unforeseen Circumstances defense" allows an employer to reduce the sixty-day notification period "if the closing or mass layoff is caused by business circumstances that were not reasonably foreseeable at the time that notice would have been required." 29 U.S.C. § 2102(b)(2).

To employ either of these defenses, the employer must satisfy 29 U.S.C. § 2102(b)(3), which provides that the employer "shall give as much notice as is practicable and at that time shall give a brief statement of the basis for reducing the notification period."

U.S. Bankruptcy Court - Hawaii   #19-90027   Dkt # 394   Filed  01/13/22   Page 15 of 19

The seventh, eighth, and tenth issues that the Unions present in the motion relate to these defenses:

(7) The Eighth and Ninth affirmative defenses asserted by the Ohana-Related Defendants (the Faltering Company and Unforeseen Circumstances defenses) to Plaintiffs' claims under the WARN Act fail and are unavailable;

(8) The Sixty-Second and Sixty-Third affirmative defenses asserted by the Malama-Related Defendants (the Faltering Company and Unforeseeable Circumstances defenses) to the Unions' WARN Act claims fail and are unavailable; and

(10) The Thirty-First and Thirty-Second affirmative defenses asserted by Mr. Gossert and Ms. Yannone to Plaintiffs' claims under the WARN Act (the Faltering Company and Unforeseeable Circumstances defenses) fail and are unavailable.

In order to avail themselves of these defenses, the defendants must show that they complied with § 2102(b)(3) by giving as much notice as is practicable and including a brief statement of the basis for reducing the notification period.

The only notice given in this case was an email sent by David Uchiyama to all employees of the Debtor the day before closure (see ECF 311, ex. 28):

> It is with a heavy heart that I must inform all of you that tomorrow Friday the 10th of November will be the last day for Island Air to be in service. We

> have exhausted all options that would have allowed us to continue and we
> have not been able to solidify any of those options within the time frame
> needed.

The email does not explain any basis for reducing the notice period from sixty days to a single day. Moreover, while the defenses change the *time requirement* of the WARN Act notice, they do not diminish the required *content* of that notice. A WARN Act-compliant notice must be specific and contain: (1) a statement as to whether the closure is temporary or permanent, (2) the expected date as to when the closure will occur and the employee separated, (3) an indication of whether or not bumping rights exist, and (4) the name and phone number of a company official to contact for further information. *See* 20 C.F.R. § 639.7(c)-(d). Additionally, a WARN Act notice is to be sent first to an employee's representative and, if none, then to the employee themselves. Mr. Uchiyama's email did not contain any of this information, and the defendants offer no reason why he could not have included that information in his message.

I will GRANT the Unions' motion for summary judgment and hold that these two defenses are unavailable to the defendants in this case.

## IV. WARN Act Defense – Good Faith

The so-called "Good Faith defense" of 29 U.S.C. § 2104(a)(4) provides that, "If an employer which has violated [the WARN Act] proves to the satisfaction of the court that the act or omission that violated [the WARN Act] was

17

U.S. Bankruptcy Court - Hawaii   #19-90027   Dkt # 394   Filed 01/13/22   Page 17 of 19

done in good faith and that the employer had reasonable grounds for believing the act or omission was not a violation [of the WARN Act], the court may, in its discretion, reduce the amount of liability or penalty provided for" in that section. The Unions' ninth issue is that "the "good faith" defense under 29 U.S.C. § 2102(a)(4), which is the eleventh affirmative defense asserted by the [Ohana-Related Defendants], fails."

Both parties have provided evidence concerning whether the company was acting in good faith and whether it reasonably believed its failure to give notice did not violate the WARN Act. The Unions offer testimony that the company's officers were not aware of the WARN Act at all. They argue that, if the officers did not know of the statute, they could not have a reasonable belief they were complying with it. On the other hand, the defendants have provided the testimony of the experienced bankruptcy attorney who represented the company at the time of the closure. He testified that he informed the company of the requirements of the WARN Act. This conflicting testimony means that there is a genuine dispute, so I will DENY the Unions' motion on this issue.

V. **CONCLUSION**

Based upon the foregoing, I will grant partial summary judgment in favor of the Unions and hold that: (a) during the sixty day period before the Debtor ceased operations and terminated its employees, defendants PAF, MIL, Mr. Au, the Tsui

U.S. Bankruptcy Court - Hawaii    #19-90027    Dkt # 394    Filed 01/13/22    Page 18 of 19

Trust, and PMH directly or indirectly "owned" the Debtor and defendants PAF, MIL, the Tsui Trust, and Mr. Au directly or indirectly held a "controlling interest" in the Debtor, within the meaning of the DWA; and (b) the defenses asserted under Haw. Rev. Stat. § 394B-9(c), 29 U.S.C. § 2102(b)(1), and 29 U.S.C. § 2102(b)(2) fail. In all other respects, the Plaintiffs' Motion for Partial Summary Judgment is denied.

**END OF DECISION**

U.S. Bankruptcy Court - Hawaii    #19-90027    Dkt # 394    Filed  01/13/22    Page 19 of 19